# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY HANNA, | Case No. 1:14-cv-01339 DLB |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMPLAINT |
| v. | WITHOUT LEAVE TO AMEND |
| RON DAVIS, et al., | |
| Defendants. | |

Plaintiff Timothy Hanna ("Plaintiff"), a state prisoner proceeding pro se, filed this action on August 28, 2014. The Court dismissed the complaint with leave to amend on September 10, 2014. Plaintiff filed a First Amended Complaint on November 20, 2014, and then a Second Amended Complaint on January 28, 2015. He names Valley State Prison ("VSP") Warden Ron Davis, VSP Lt. Perry, VSP Psychologist Lawrence, VSP Inmate Appeals Officer M. Wilson, VSP Appeals Coordinator K. Kostecky, California Department of Corrections and Rehabilitation ("CDCR") Director of Mental Health Doe 1, CDCR employees Does 2-10, and CDCR as Defendants.[1]

## A.   SCREENING STANDARD

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on September 5, 2014.

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.      ALLEGATIONS IN COMPLAINT**

Plaintiff is currently housed at the Correctional Training Facility.  The events at issue occurred at VSP in Chowchilla, California.

2

1   By way of background, Plaintiff alleges that since he was eight or nine, he has suffered
2 from paruresis, which makes it difficult for him to urinate in front of others.  He is still unable to
3 urinate in a restroom in front of others.

4   In or about May 2007, he was placed in Mental Health Care Delivery System at the
5 Clinical Correctional Case Management System after experiencing psychotic episodes.  He also
6 received medication and treatment for panic attacks, and the attacks became manageable.
7 However, he still suffered from occasional episodes.

8   Plaintiff continued to be seen by mental health staff and was diagnosed with anxiety
9 disorder, social anxiety disorder, "agauraphobia" as well as repeated panic attacks.  All of these
10 diagnoses aggravated his paruresis.  As a result, Plaintiff was issued a Chrono which deemed him
11 medically unfit for dormitory living.  The Chrono was valid through 2011.

12   In December 2011, Plaintiff was transferred to Quentin State Prison.  While there, he
13 suffered repeated panic attacks.  In 2012, his problem intensified and in order to urinate, he had to
14 sit down.  This caused him considerable embarrassment.

15   In November 2012, Plaintiff was moved to a 200-man dormitory and his Chrono was
16 ignored.  His paruresis worsened and he often had to wait long hours until the restroom was
17 empty.

18   In January 2014, Plaintiff was transferred to VSP, which was opening an Enhanced
19 Program Facility ("EPF").  He was told that after the transfer, he would be subject to random drug
20 testing by urinalysis where custody staff would be present.  He knew that he would likely be
21 unable to comply.

22   On January 28, 2014, Plaintiff put in a mental health care request to discuss his growing
23 anxiety about urinalysis and his fear it could trigger panic attacks.  No one ever responded to the
24 request and he was not seen.

25   The only time that Plaintiff was seen by medical staff was during his initial intake, where
26 he had no chance to discuss his mental health issues.  Plaintiff's fear of a urinalysis began to
27 interfere with his daily life.

28

On June 26, 2014, Plaintiff was called for a urinalysis. During the exam, he had a panic attack, and because of his paruresis, he could not provide a sample. Plaintiff was deemed to have failed the exam.

During the examination, Plaintiff repeatedly informed the officer that he suffered from anxiety disorder and paruresis, and that he would not likely be able to provide a sample if the officer remained in the room. Plaintiff offered several alternatives, including a blood test, but the officer refused and told Plaintiff that if he could not urinate, he would be issued a disciplinary violation.

Plaintiff filed an emergency request to see mental health staff to discuss what had happened.

On July 1, 2014, Plaintiff met with Defendant Lawrence and explained his anxiety attack due to paruresis. He also asked why mental health staff did not respond to any of his previous requests, and told her that he experienced emotional distress and suffering as a result. Defendant Lawrence refused to explain the delay in treatment, but stated that Plaintiff would be seen again shortly.

In mid-July 2014, Plaintiff met with Dr. Harrelson, who stated that he was familiar with paruresis but would not provide treatment other than to prescribe medication to alleviate some of the more severe symptoms.

For the next several weeks, Plaintiff went to medication line. He was told that Dr. Harrelson did not write any prescriptions or treatment plans for Plaintiff. Medical staff also told him that he was not scheduled to be seen by either Defendant Lawrence or Dr. Harrelson.

Plaintiff put in another mental health request and was seen by Defendant Lawrence on August 2, 2014. He again asked for help and treatment for his paruresis and showed her that in the Diagnostic and Statistical Manual of Mental Health Disorders, Volume V (DMS V), paruresis is mentioned under the criteria for social anxiety disorder. Defendant Lawrence told Plaintiff that CDCR had not yet adopted DSM V, and was working under the 1999 DSM IV. She also explained that the Director of Mental Health for CDCR was not giving any guidelines for the treatment of paruresis. Defendant Lawrence claimed that she could therefore not treat Plaintiff for

4

the disorder, even though his mental health records stated that he suffered from an acute case of the disorder.

Defendant Lawrence told Plaintiff that she would ask the Chief of Mental Health Services at VSP for guidance and for a recommendation for an appropriate treatment plan for Plaintiff.

Plaintiff alleges that while he was at VSP, he did not receive any treatment for paruresis or social anxiety disorder.

Based on these contentions, he alleges violations of the Eighth Amendment.

**C.     DISCUSSION**

1.     Defendants Davis, Perry, Wilson and Kostecky

Plaintiff names Defendants Davis, Perry, Wilson and Kostecky as Defendants in both the caption and on the form complaint. However, he does not include any factual allegations against them. Keeping these Defendants in the caption and naming them on the form may have been inadvertent, as the Court explained in the prior screening order that Plaintiff should not amend his claims against these Defendants.

Accordingly, Plaintiff fails to state a claim against Defendants Davis, Perry, Wilson and Kostecky. Iqbal, 556 U.S. at 676-77.

2.     CDCR as Defendant

Plaintiff again names CDCR as a Defendant, perhaps for the purpose of obtaining injunctive relief. However, the Eleventh Amendment erects a general bar against federal lawsuits brought against the state. Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation marks omitted). While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," Wolfson, 616 F.3d at 1065-66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900 (1984); Buckwalter v. Nevada Bd. of Medical Examiners, 678 F.3d 737, 740 n.1 (9th Cir. 2012).

Thus, Plaintiff may not maintain a claim against CDCR. Plaintiff was informed of this in the prior screening order.

### 3. Eighth Amendment Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

#### a. *Doe 1 and Does 2-10*

Plaintiff alleges that Doe 1, the Director of Mental Health at CDCR,[2] delayed the adoption of the DSM V, and failed to provide clear guidelines to mental health staff at CDCR facilities. He contends that this was done with deliberate indifference and caused pain, suffering, physical injury and emotional distress. He also alleges that Does 2-10 (CDCR employees) were deliberately indifferent, presumably for the same reason.

In the prior screening order, the Court explained that the failure to adopt the DSM V, which recognizes paruresis as a mental disorder, was not causally connected to Plaintiff's claims that he was injured by the urinalysis. In amending, Plaintiff has changed his allegations slightly to allege that their actions caused him general injury. While this may not be as much of a factual leap, Plaintiff does not include facts to demonstrate that Doe 1 acted with deliberate indifference

---

[2] Plaintiff refers to Doe 1 as the Director of Mental Health for CDCR, and then later as the Director of Mental Health for VSP. Whether he works for CDCR or VSP, however, is not material.

in not adopting the DSM V. He simply states, in a conclusory manner and without explanation, that Doe 1 acted with deliberate indifference. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-679.

Plaintiff was informed of the pleading requirements in the prior screening order, but he has not provided sufficient factual information to state a claim against Defendants Doe 1 and Does 2-10.

b.      *Defendant Lawrence*

In the prior screening order, the Court explained that Plaintiff failed to show that Defendant Lawrence acted with the requisite state of mind. Specifically, the Court found:

> Plaintiff alleges that on July 1, 2014, he told Defendant Lawrence that he had anxiety and a panic attack when he was ordered to submit to a urinalysis. He also told her that he had paruresis, which compounded the problem. Defendant Lawrence told Plaintiff that she could not help him at his hearing because she did not know anything about paruresis. She also referred him to a psychiatrist. Therefore, according to Plaintiff's allegations, Defendant Lawrence would not treat him for a problem that she was not familiar with and referred him to a psychiatrist.
>
> Similarly, when Plaintiff returned to Defendant Lawrence on August 2, 2014, she again told Plaintiff that she was not aware of this specific social phobia (paruresis) and had no training related to treatment, but that she would ask her boss about it and "what to do." Again, Plaintiff's allegations show that Defendant Lawrence did not provide treatment for a disorder that she was not familiar with and indicated that she would seek help from her superior.

ECF No. 8, at 19.

Now, Plaintiff leaves out the allegation that Defendant Lawrence told him at the July 1 appointment that she could not treat him because she did not know anything about the disorder. Certainly, Plaintiff cannot state a claim by omitting certain information.

In any event, Plaintiff's allegations remain insufficient to show that she acted with the requisite state or mind. Plaintiff alleges that she failed to explain why he did not get a response to his request for treatment, but her failure to explain the delay has nothing to do with the treatment she provided, and Plaintiff does not link her to any prior delay of treatment.

7

Plaintiff also alleges, as he did before, that although Defendant Lawrence told him during the August 2, 2014, exam that she could not treat him because CDCR had not adopted the DSM V, she was going to ask the Chief of Mental Health Services at VSP "for a recommendation as to an appropriate treatment plan for Plaintiff." ECF No. 24, at 11. This negates any finding that Defendant Lawrence "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer, 511 U.S. at 837.

Finally, Plaintiff alleges that he did not received any treatment for paruresis or social anxiety disorder while at VSP. However, he does not provide any facts for the period after August 2, 2014, and he therefore fails to link Defendant Lawrence, or any Defendant, to a denial of treatment.

Plaintiff was informed of the deficiencies of his claim against Defendant Lawrence, but he has failed to cure the issues.

### 4. Injunctive Relief

Plaintiff requests an injunction ordering Defendants to either stop all urinalysis on Plaintiff, or provide him with accommodations. However, Plaintiff is no longer incarcerated at VSP, and his claims for injunctive relief are therefore moot. When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Alvarez v. Hill, 667 F.3d 1061, 1063-64 (9th Cir. 2012).

## D. CONCLUSION AND ORDER

Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted under section 1983. The Court has provided Plaintiff with an opportunity to amend his complaint, but he has failed to correct the deficiencies. Given the nature of the amendments, the Court finds that further leave to amend is not warranted. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

///

///

///

Accordingly, this action is DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim for which relief may be granted.

IT IS SO ORDERED.

    Dated: __**July 1, 2015**__                    /s/ *Dennis L. Beck*
                                                        UNITED STATES MAGISTRATE JUDGE